# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
LIND, KRAUSS, and BORGERDING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant CHRISTOPHER M. SAULSBERRY**
**United States Army, Appellant**

ARMY 20120132

Headquarters, 3rd Infantry Division and Fort Stewart
Tiernan P. Dolan, Military Judge
Colonel Randall J. Bagwell, Staff Judge Advocate

For Appellant: Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain Brian J. Sullivan, JA (on brief).

For Appellee: Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Catherine L. Brantley, JA; Captain Jessica J. Morales, JA (on brief).

17 April 2014

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BORGERDING, Judge:

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of assault with the intent to inflict grievous bodily harm and burglary in violation of Articles 128 and 129, Uniform Code of Military Justice, 10 U.S.C. §§ 928, 929 (2006) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to the grade of E-1 and credited appellant with 170 days of confinement against the sentence to confinement.

This case is now before the court for review under Article 66, UCMJ. Appellant assigns two errors and raises four matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Appellant's second assignment of error alleging ineffective assistance of counsel in the sentencing phase of his court-martial merits discussion but no relief.

**FACTS**

The charges against appellant resulted from his actions on 15 August 2011, when he unlawfully broke in and entered the home of his ex-wife, Specialist (SPC) BG, and stabbed Sergeant (SGT) JG, who was staying in the home, in the back with a metal syringe from a turkey injector. Appellant was represented at trial by Mr. MS, civilian defense counsel, and Major (MAJ) SC, trial defense counsel. Mr. MS handled the majority of the merits phase of the trial whereas MAJ SC conducted all cross-examination, direct examination, and argument during the sentencing phase.

Major SC called four sentencing witnesses on appellant's behalf during the defense case in extenuation and mitigation. Appellant's mother described him as a quiet child who "[n]ever was any trouble." He was good in school, played basketball and had lots of friends. He was "just a good child." Appellant's mother also testified that appellant was very proud of his military service. She wanted him to leave the Army after his second tour in Iraq, but appellant told her he wanted to make the military his career and that he liked serving his country. She further told the panel that the family was "behind him 100 percent" and would do whatever they needed to do to help appellant put this incident behind him and get restarted in society.

Appellant's uncle described him as a "happy child" who was raised by his grandparents on a farm. He told the panel appellant had a good work ethic and followed orders on the farm; he was a "good kid." The uncle also testified that the family was there to "help him put this behind him" and would do what needed to be done to "rectify the situation." The uncle felt that there was a place in society for appellant. Next, appellant's aunt testified much as his mother and uncle did, telling the panel that appellant was a "sweet" child who was never in any trouble and that she was willing to help him "recover" and that she believed there was a place in society for appellant.

Finally, trial defense counsel called appellant's ex-wife, MA. MA first testified during the defense case-in-chief on the merits, offering, *inter alia*, her opinion that appellant was truthful and not a violent person and that SPC BG, who was her first cousin, was not an honest person. During her testimony on sentencing, MA testified that appellant missed much of their daughter's life because of deployments, but that he "support[ed] her emotionally" and provided for her financially, to include needed medical benefits. She described appellant as "dependable" and "loyal" and "devoted to the military," as well as a good father.

Major SC also submitted a 65-page "good soldier packet" that contained appellant's ERB, several Army Commendation Medals (including two for service in Iraq); various other awards, including a Combat Action Badge; his prior Honorable Discharges; several educational accomplishments; and documents from his time in

pretrial confinement which show that his evaluations and work ratings were primarily deemed "above average." Defense counsel also submitted a written statement from a fellow soldier who indicated that appellant was "respectful, kind, and willing to help."

At the close of the defense case in extenuation and mitigation, defense counsel read appellant's unsworn statement. In it, appellant apologized and took responsibility for what he had done. After a brief description of his childhood, appellant spoke at length about his experiences in the military, to include his deployments to Iraq and how much he loved being in the Army. During her closing argument, MAJ SC urged the panel to look at appellant's entire life and not simply the one act for which he was convicted. She briefly noted that he served honorably for a long time in the military[1] and that he "had no UCMJ." She also informed the panel that "members of his battery have been here in support of him for two days. That shows that he is a man who served honorably that other people looked up to and respected."

In addition to presenting the defense case in extenuation and mitigation, MAJ SC impeached the testimony of one government witness and effectively cross-examined the remaining two government witnesses. First, during the government's case in aggravation, trial counsel elicited from SPC BG that after the incident, her children did not like to sleep in dark rooms and had to have night lights or televisions on at night. In response, trial defense counsel established through appellant's mother that these children routinely left televisions on in their rooms before 15 August 2011. Second, after SGT JG's counselor testified that she diagnosed SGT JG with post-traumatic stress disorder (PTSD) as a result of the stabbing, trial defense counsel established on cross-examination that the counselor put in her notes that the PTSD was deployment-related, and that SGT JG identified his divorce and the military as stressors for him. On cross-examination of both the counselor and again from SGT JG, defense counsel elicited that SGT JG had "anger issues" prior to the stabbing, that SGT JG had received punishment under Article 15, UCMJ for assault prior to the stabbing, and that after the stabbing SGT JG had an altercation with his supervisor or superior for which he did not receive punishment after the counselor spoke to his First Sergeant.

On appeal, appellant now claims that MAJ SC was ineffective because she failed to contact four specific witnesses who would have, according to appellant, testified as to military performance and rehabilitative potential. In an affidavit filed before this court, appellant avers that he gave MAJ SC the names of Staff Sergeant (SSG) CT; SSG SM; SPC DW; and First Sergeant (1SG) (Ret.) JJ, all of whom were in appellant's battery at Fort Stewart. Appellant maintains that MAJ SC told him, a

---

[1] Appellant's ERB, submitted by the defense as part of the good soldier packet, indicated that he had served 14 years at the time of the trial.

few days before his court-martial, that she was "unable to get in touch" with these individuals. To support his affidavit, appellant has provided affidavits from SSG SM and 1SG JJ, but has provided nothing from SSG CT or SPC DW. In addition, appellant has provided an affidavit from a SGT EH, despite the fact that he does not mention SGT EH in his affidavit.

On 13 August 2013, upon motion by the government, we ordered affidavits from both Mr. MS and MAJ SC to address appellant's allegations of ineffective assistance of counsel. Mr. MS provided a short affidavit essentially deferring all answers to MAJ SC. Major SC provided a three-page affidavit with attachments detailing her pre-trial investigation with respect to evidence in extenuation and mitigation and explaining her strategy during the sentencing phase of the court-martial. She specifically denies that appellant requested 1SG (Ret.) JJ or SSG SM to testify on his behalf. She does not offer any information as to SSG CT or SPC DW.

**LAW**

The Sixth Amendment guarantees an accused the right to the effective assistance of counsel. *United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011) (citing *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001)). To establish that his counsel was ineffective, appellant must demonstrate "both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). This two-part test found in *Strickland* applies to sentencing hearings. *United States v. Alves*, 53 M.J. 286, 289 (C.A.A.F. 2000) (citations omitted).

We review both prongs of the *Strickland* test de novo. *United States v. Mazza,* 67 M.J. 470, 474 (C.A.A.F. 2009) (citing *United States v. Anderson,* 55 M.J. 198 (C.A.A.F. 2001); *United States v. Wean,* 45 M.J. 461, 463 (C.A.A.F. 1997)). Under the first prong, appellant must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. 687. When challenging the performance of trial defense counsel, the appellant "bears the burden of establishing the truth of the factual allegations that would provide the basis for finding deficient performance." *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (citation omitted). Generally, appellate courts "will not second-guess the strategic or tactical decisions made at trial by defense counsel." *Mazza,* 67 M.J. at 475 (citations omitted).

The prejudice prong of the test for ineffective assistance of counsel requires a showing that the "counsel's errors were so serious as to deprive the [accused] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The test is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"On appellate review, there is a 'strong presumption' that counsel was competent." *United States v. Grigoruk*, 56 M.J. 304, 306–307 (C.A.A.F. 2001) (citing *Strickland,* 466 U.S. at 689); *United States v. Cronic*, 466 U.S. 648, 658 (1984). To determine whether appellant has overcome this presumption of competence, we apply the three-part test articulated by our superior court's predecessor in *United States v. Polk*:

> 1. Are the allegations true, and, if so, is there a reasonable explanation for counsel's actions?
>
> 2. If the allegations are true, did counsel's performance fall measurably below expected standards?
>
> 3. Is there a reasonable probability that, absent the errors, there would have been a different outcome?

32 M.J. 150, 153 (C.M.A. 1991).

## ANALYSIS

As an initial matter, with respect to SSG CT and SPC DW, appellant provides no affidavits, and offers no information as to what they would have said on his behalf, or that they even would have agreed to testify on his behalf. We find that with respect to these two individuals, appellant has failed to meet his burden to establish "the truth of the factual allegations that would provide the basis for finding deficient performance." *Tippit*, 65 M.J. at 76; *see also United States v. Clemente,* 51 M.J. 547, 551 (Army Ct. Crim App. 1999) (citing *United States v. Russell*, 48 M.J. 139, 141 (C.A.A.F. 1998)) ("To establish that his counsel's performance . . . fell below an objective standard of reasonableness, the appellant must demonstrate that the witnesses were available to testify and that their testimony would have assisted the defense.).

Next, because appellant and counsel have essentially filed conflicting post-trial affidavits concerning whether or not appellant requested 1SG (Ret.) JJ and SSG SM, pursuant to *United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997), we must analyze whether a post-trial evidentiary hearing is required. We find such a hearing is not required in this case upon application of the first *Ginn* principle: "if the facts alleged in the affidavit allege an error that would not result in relief even if any factual dispute were resolved in appellant's favor, the claim may be rejected on that basis." *Ginn*, 47 M.J. at 248.

The affidavit from 1SG (Ret.) JJ states that while appellant was a "stellar Soldier" as a private at Fort Campbell, as a sergeant at Fort Stewart and in Iraq, he "did what he was told to do and was an average duty performer." Further, while 1SG (Ret.) JJ said appellant would "do very well back in the military," this was only "if he was put under the right leadership." We find that this lukewarm endorsement of appellant as a Soldier creates no "reasonable probability" that, even had MAJ SC interviewed and called 1SG (Ret.) JJ to testify on appellant's behalf that "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

We are left with the affidavit from SSG SM[2] in which he states that appellant was a "top level noncommissioned officer" and had "100% rehabilitative potential in society." For the following reasons, we find that even if the facts alleged in appellant's affidavit are true and he did request that MAJ SC contact SSG SM and ask him to testify during the sentencing hearing and she subsequently failed to do so, under the totality of the circumstances in this case, there is no "reasonable probability that . . . the result of the proceeding would have been different" had SSG SM testified consistent with his affidavit on appellant's behalf. *Strickland*, 466 U.S. at 694. Thus, any alleged error by trial defense counsel would not result in relief and we may reject appellant's claim on this basis. *Ginn*, 47 M.J. at 248.

First, this is not a case where trial defense counsel has failed to present any evidence in extenuation and mitigation. *See United States v. Weathersby,* 48 M.J. 668 (Army Ct. Crim. App. 1998). To the contrary, as detailed above, in addition to impeaching and cross-examining the government witnesses, MAJ SC presented four witnesses, a good soldier packet and an unsworn statement on behalf of appellant, all of which touched on appellant's service and his rehabilitative potential. This sentencing case reflects MAJ SC's articulated overall strategy for presenting the case in extenuation and mitigation in that she intended to "cross-examine the complaining witnesses regarding the long-term effects since the incident and their own prior and subsequent bad acts," as well as to "have the panel see that [appellant] was a good person who had a brief and unrepeated failure of judgment related to his emotional state . . ." and "that he had served honorably and deserved a second chance."

Second, neither is this a case where trial defense counsel has failed to conduct any investigation into extenuation and mitigation. *See generally, United States v. Boone,* 49 M.J. 187 (C.A.A.F. 1998); *United States v. Alves*, 53 M.J. 286 (C.A.A.F. 2000). According to her uncontested affidavit, MAJ SC interviewed three noncommissioned officers whom appellant requested she contact, and she made

---

[2] We note that the military judge referred to one of the bailiffs at appellant's trial as "Sergeant M [same last name as the individual who provided the affidavit]."

"repeated attempts" to contact a fourth NCO named by appellant.[3] With respect to the three individuals she did speak to, MAJ SC articulated specific tactical reasons as to why she did not call them to testify on behalf of appellant. We will not second guess these tactical decisions. *Mazza,* 67 M.J. at 475.[4] Major SC conducted a competent investigation into matters of extenuation and mitigation such that we can be assured that her actions were reasonable "under prevailing professional norms." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland,* 466 U.S. at 688). Thus, we cannot say that, even if she failed to contact SSG SM, MAJ SC's entire presentencing investigation taken as a whole fell measurably below expected standards. *Polk*, 32 M.J. at 153.[5]

Finally, appellant was found guilty of burglary and assault with the intent to inflict grievous bodily harm. He entered his ex-wife's home in the very early morning hours of 15 August 2011, approached SGT JG from behind as he was bending over to retrieve socks for PT, and stabbed him in the back with a very large needle-like object that resulted in SGT JG suffering from a punctured lung. Despite MAJ SC's advocacy during the sentencing phase, SPC BG and SGT JG testified that they suffered emotional effects from appellant's actions. Both testified that they had trouble sleeping at night and experienced anxiety as a result of the attack. SGT JG

---

[3] This was SGT EH, who has submitted an affidavit to this court. In his affidavit, SGT EH claims only that he never talked to MAJ SC and that she never asked him to testify for appellant. Thus, there is no conflict between his and MAJ SC's affidavits. *See United States v. Ginn*, 47 M.J. 236 (C.A.A.F. 1997). Accordingly, we find that MAJ SC made sufficient efforts to reach SGT EH, to include looking up alternate phone numbers on AKO and leaving messages with the orderly room; however, SGT EH never returned her calls.

[4] In short, 1SG W "relayed only a shallow and generic knowledge" of appellant and was "unwilling to testify;" SSG F was a client of MAJ SC "concerning a domestic incident" and she felt his circumstances would "impact his credibility as a witness on behalf of [appellant]'s peacefulness and good military character;" and SGT O (who was SPC BG's ex-husband) "had no actual opinion or relevant knowledge of" appellant and much of his opinion of SPC BG was "colored by their divorce." We find that MAJ SC provided a "reasonable explanation" for her actions. *Polk*, 32 M.J. at 153.

[5] Major SC also interviewed a Sergeant First Class (SFC) D, appellant's former platoon sergeant. She interviewed him on her own initiative, not pursuant to a request by appellant (although appellant authorized her to speak to SFC D). Although she considered SFC D a "good sentencing witness," MAJ SC ultimately did not call him because SFC D later learned that appellant misrepresented his whereabouts to SFC D on the date of the incident. As a result, SFC D "did not actually continue to endorse [appellant] to be a good Soldier."

told the panel that since the stabbing, he "can't have [his] back to open spaces" and that every night before he goes to sleep and every morning before others are awake, he walks through the house with a handgun and makes sure every door is locked and no one is standing outside.

For his crimes, appellant faced, *inter alia*, a dishonorable discharge and fifteen years confinement. He was sentenced to, *inter alia*, a bad-conduct discharge and three years' confinement.[6] Thus, based on the overall combination of the strength (or lack thereof) of the potential testimony now offered by appellant, the case in extenuation and mitigation that was presented on appellant's behalf, the seriousness of appellant's crimes and their particularly aggravating circumstances, and the sentence he received, we find that there is no "reasonable probability that . . . the result of the proceeding would have been different" had MAJ SC contacted and or called the witnesses appellant now alleges she disregarded. *Strickland*, 466 U.S. at 694.

## CONCLUSION

After considering the entire record, the parties' briefs, and those matters personally raised by appellant pursuant to *Grostefon*, the findings of guilty and the sentence are AFFIRMED.

Senior Judge LIND and Judge KRAUSS concur.

FOR THE COURT:

ANTHONY O. POTTINGER
Chief Deputy Clerk of Court

---

[6] Trial counsel argued for, *inter alia*, 10 years confinement and a dishonorable discharge.