**150**

UNITED STATES, Appellee,

v.

Wilbert T. POLK, Private First Class
U.S. Army, Appellant.

No. 64,079.
CM 8700966.

U.S. Court of Military Appeals.

Argued Dec. 18, 1990.
Decided March 27, 1991.

For Appellant: *Captain Alan M. Boyd* (argued); *Lieutenant Colonel Russell S. Estey* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Captain Kenneth H. Goetzke, Jr.* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Captain Randy V. Cargill, Captain Jonathan F. Potter* (on brief).

*Opinion of the Court*

COX, Judge:

Appellant was convicted by general court-martial of kidnapping and rape, in violation of Articles 134 and 120, Uniform Code of Military Justice, 10 USC §§ 934 and 920, respectively. He appeals his con-

viction on two grounds. First, he contends that the evidence to convict him is not sufficient as a matter of law. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Odegard*, 25 M.J. 140 (CMA 1987), *cert. denied*, 484 U.S. 1061, 108 S.Ct. 1017, 98 L.Ed.2d 982 (1988). Second, he contends that he was denied effective assistance of counsel. *United States v. Scott*, 24 M.J. 186 (CMA 1987).

## Issue I

### Sufficiency of the Evidence

■ On the date of the offenses, the victim and Martha M., another young female friend of appellant, rode with him to Fort Campbell, Kentucky. The vehicle was owned by Specialist Kendall Hunter, the co-accused in the case. The two women, appellant and Specialist Hunter all met at Hunter's barracks. It became apparent that Hunter wanted the two girls to engage in sexual intercourse with several of their friends at the barracks. An argument ensued. Martha left the group, clearly manifesting her intent not to participate in any group sex.

Eventually, appellant, Specialist Hunter, another soldier named Corporal Nelson, and the victim left the barracks area in Hunter's vehicle and proceeded to a residence on post to which Nelson had access. The foursome entered the quarters, and Hunter went into the bedroom with the victim. After some dispute, Hunter had sexual intercourse with the victim; afterward they all returned to the barracks area. Appellant, Hunter, and Nelson abandoned the victim at the barracks, leaving her to get home on her own.

The Government's theory at trial, supported by the testimony of the victim, was that appellant and Hunter kidnapped the victim by forcing her into Hunter's car and taking her to the other house against her will. Upon arrival at the house, the victim resisted any efforts by Hunter or the others to have sexual intercourse, but Hunter forced her to have intercourse with him.

She further claimed that appellant assisted by pulling her underpants off.

At trial, appellant took the witness stand in his own defense. He was asked a few preliminary questions by his counsel. Then, without explanation, defense counsel introduced a pretrial statement given by appellant to the Criminal Investigation Command (CID). To summarize the statement, Hunter and the victim were former boy and girl friends. The other girl had been appellant's girl friend. The two couples had often engaged in sexual intercourse, even in the presence of each other. While appellant knew that Hunter was being forceful with the victim, he did not consider that she was kidnapped or raped.

Our review of the record leads us to conclude that the Government offered evidence, which if believed by a rational finder of fact, would establish each and every element of the charged offenses beyond a reasonable doubt. *United States v. Odegard, supra.* Accordingly, the first issue is decided against appellant.

## Issue II

### Effective Assistance of Counsel

Appellant contends, post-trial, that he asked his lawyer, Captain Calhoun, to have Hunter testify as a witness in his defense. He further claims to have given his lawyer the names of four other witnesses. According to appellant's affidavit:

> I brought to my counsel's attention the fact that Joyce [W] and Melodie [M] had additional information in the form of statements supposedly made by ... [the victim]. That would have served two very important functions, primarily these witnesses would have told the court that ... [the victim] said I was not involved in any rape or kidnapping, and secondly these two witnesses would have told the court in .... [the victim's] own words why she told a lie about the whole incident, in other words ... [the victim's] motive would have been clearly revealed. *I.E.,* I was just upset with the boys because they wouldn't take me back to Hopkinsville, KY.

Finally, I brought to the attention of CPT. Calhoun, two more witness[es], Jerome [G] and Willie [B]. I discussed in detail how these two witnesses could help establish the fact that ... [the victim] was notorious for being permissive and untruthful in several other matters.

In an affidavit filed with the United States Court of Military Appeals on September 4, 1990, defense counsel, now a civilian attorney, does not dispute appellant's factual claims. Instead, he responds:

I came to the conclusion that both soldiers [referring to appellant and Hunter] had gotten together and agreed to present a set of facts which would act to exculpate both men. It was my belief at the time that these facts would not have been truthful.

It is very interesting to note that Mr. Calhoun refers to his client throughout the body of the affidavit as "P.F.C. Pope," not by his real name, Polk (though the correct name appears in the caption of the affidavit.) In an earlier affidavit dated November 3, 1989, submitted to the court below, counsel admitted that appellant gave him the names of Melodie M and Willie B. He does not deny that appellant also gave him the names of Joyce W and Jerome G, although he does not "recall" the names. Counsel also said that he could not locate Melodie, even with appellant's help, and that he did talk with Willie B. Willie was not called as a witness, although he apparently would have testified that the victim had attempted to withdraw the charges against appellant. Finally, counsel explained that Sp/4 Hunter was not called by the defense because his counsel said he would decline to testify since his case was pending.

In his brief, appellant has asked us, in support of his post-trial allegations of ineffective assistance of counsel, to take judicial notice of the testimony that Specialist Hunter gave under oath in his own trial. ACMR 8701332. This we have done.

In summary, Hunter's testimony revealed that he was rough and abusive with the victim, but no more so than he had been on other occasions. The dispute, however, was not whether *he* could have sexual intercourse with the victim; rather, it was whether she and her girlfriend would engage in sexual intercourse with several other soldiers. Hunter was insistent that the victim went voluntarily with him to the house and that she had voluntary sex with him.* He admitted that she resisted all efforts to have intercourse with either appellant or Nelson.

We often receive claims that counsel have been ineffective, and they are extremely difficult to resolve on direct appeal. *United States v. McGillis*, 27 M.J. 462 (Daily Journal 1988) (summary disposition). Contrary to state and federal practice, these claims do not come to us through post-conviction attacks on the verdict and sentence, where hearings are held and evidence is heard, upon which judges make factual findings and conclusions of law for an appellate court to review and consider. *See* 28 USC § 2254. Claims come to us instead in the form of affidavits or even unsworn allegations. There is no mechanism set out in the Uniform Code of Military Justice for this Court or the Courts of Military Review to evaluate such post-conviction claims. There are provisions permitting an accused to seek a new trial on the limited "grounds of newly discovered evidence or fraud on the court." Art. 73, UCMJ, 10 USC § 873.

In *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967), this Court was confronted with numerous claims of command influence at Fort Leonard Wood, Missouri. The Judge Advocate General of the Army certified to this Court the question of how to resolve these claims. Art. 67(b)(2), UCMJ, 10 USC § 867(b)(2) (1956). This Court adopted a procedure for a hearing to be held to take evidence and enter findings of fact and conclusions of law. *Id.* at 149,

---

* It is interesting to note, but not relevant, that Hunter was convicted of rape. Evidently his court-martial did not accept his version of the facts. However, it is pure speculation as to the impact this testimony might have had in appellant's trial.

37 CMR at 413. This *"DuBay Hearing"* has also proved to be a useful tool in determining whether counsel have been ineffective. *See United States v. Scott,* 18 M.J. 629 (NMCMR 1984), *rev'd,* 24 M.J. 186 (CMA 1987).

■ In these cases we are faced with three basic questions:

1. Are the allegations made by appellant true; and, if they are, is there a reasonable explanation for counsel's actions in the defense of the case?

2. If they are true, did the level of advocacy "fall[ ] measurably below the performance ... [ordinarily expected] of fallible lawyers"? *United States v. DiCupe,* 21 MJ 440, 442 (CMA), *cert. denied,* 479 U.S. 826, 107 S.Ct. 101, 93 L.Ed.2d 52 (1986).

3. If ineffective assistance of counsel is found to exist, "is ... there ... a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt?" *United States v. Scott,* 24 M.J. 186, 189 (CMA 1987), *quoting Strickland v. Washington,* 466 U.S. 668, 695, 104 S.Ct.2052, 2069, 80 L.Ed.2d 674 (1984). *United States v. McGillis, supra* at 462.

■ Turning to the instant case, based upon the affidavits, the testimony of Hunter at his trial, and the entire record of this trial, we find no necessity to order further proceedings. Appellant's claims that his lawyer would not explore Hunter's testimony, or even a substitute therefor if he were unwilling to testify, are undisputed. The reason given by defense counsel—"It was my belief at the time that these facts would not have been truthful"—is conclusory, self-serving and inadequate to justify his failure to do everything legally and ethically required to obtain the testimony of Hunter and the other witnesses, provided the testimony proved to be helpful to appellant and was not demonstrably untruthful. His failure to investigate was "measurably below" the standards we have set for practitioners before military courts. *United States v. Scott, supra.* Lastly, we cannot say with any degree of certainty that appellant would have been convicted if Hunter's version of the events had been before the factfinder or if the question of the victim's veracity had been fully explored.

The following facts are uncontested by the parties. First, Hunter and the victim had a long-standing relationship involving arguments, physical fights, and subsequent sexual intercourse. Second, appellant was certainly aware of the relationship between the victim and Hunter. Third, the purpose for the adventure was to convince the victim to engage in sexual intercourse with multiple participants, including appellant and Nelson. Fourth, only Hunter actually engaged in sexual intercourse with the victim. Fifth, Hunter claims that the intercourse was consensual. Sixth, Hunter claims that the victim went voluntarily to the house and was not kidnapped. These are the so-called "set of facts" which defense counsel deemed "at the time" to be untruthful or which, at least, he did not attempt to investigate and prove them to be true.

■ Counsel indeed has an ethical duty, as the Government contends, not to suborn perjury [Rule 3.3(a)(4), DA Pam. 27–26, Rules of Professional Conduct for Lawyers (Dec. 87) ], but he likewise has a duty to make reasonable investigations to determine what the true facts are. *United States v. Scott, supra* at 188.

This is not a case where appellant, himself, grabbed a victim, threw her into an automobile and raped her. Rather this is a case where friends and acquaintances engaged in sexual conduct which the victim characterized as kidnapping and rape. Appellant's guilt was founded upon a theory of aiding and abetting the situation. Appellant's understanding of what was going on, his state of mind, was a key issue. The veracity of the victim was a key issue. Hunter's state of mind and his understanding of the adventure were key issues. Counsel's failure to pursue appellant's defense, at least to a point where he could articulate his reasons for disbelieving his client, is not acceptable.

The decision of the United States Army Court of Military Review, 27 M.J. 812 is reversed. The findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Chief Judge SULLIVAN and Senior Judge EVERETT concur.