UNITED STATES ARMY COURT OF CRIMINAL APPEALS

 Before
 JOHNSON, COOK, and MAGGS
 Appellate Military Judges

 UNITED STATES, Appellee
 v.
 Captain CLIFTON E. TAVARES
 United States Army, Appellant

 ARMY 20080545

 United States Military Academy
 David L. Conn, Military Judge
 Colonel Robin N. Swope, Staff Judge Advocate (pretrial)
 Colonel Steven T. Strong, Staff Judge Advocate (post-trial)

For Appellant: Captain Michael E. Korte, JA; Gary Myers, Esquire (on
brief).

For Appellee: Colonel Norman F.J. Allen III, JA; Lieutenant Colonel Martha
Foss, JA; Major Lynn Williams, JA; Captain Stephanie R. Cooper, JA (on
brief).

 26 May 2010

 ---------------------------------
 SUMMARY DISPOSITION
 ---------------------------------

Per Curiam:

 An officer panel, sitting as a general court-martial, convicted
appellant, contrary to his pleas, of four specifications of maltreatment in
violation of Article 93, Uniform Code of Military Justice, 10 U.S.C. § 993
[hereinafter UCMJ], and sentenced him to dismissal from the service. The
convening authority approved the sentence as adjudged. This case is before
us for review under Article 66, UCMJ. We affirm the findings and the
sentence.

 Appellant contends that his conviction and sentence should be set
aside because his trial defense counsel failed to investigate and elicit
exculpatory testimony from a key defense witness, Ms. Mattie Moore.
According to appellant, this failure resulted in ineffective assistance of
counsel. To support this contention, appellant has submitted sworn
statements from Ms. Moore. The government has responded by submitting
conflicting sworn statements from appellant’s trial defense counsel, Mr.
Dale Saran and Captain (CPT) Jessica Conn.

 The first and second specifications of the maltreatment charge, as
found subject to exceptions and substitutions, say in part that appellant
abruptly opened the door to a female changing room in order to see
Specialist (SPC) AS and Private First Class (PFC) NB in a state of undress.
 The first specification of maltreatment also states in part that appellant
called SPC AS by the nickname “Brown Sugar.”

 In her sworn statements, Ms. Moore, a civilian anesthesia nurse who
worked with appellant, SPC AS, and PFC NB at Keller Army Community Hospital
at West Point, disagrees with the panel’s findings with respect to these
specifications. Addressing the locker room incident, Ms. Moore asserts in
part:

 The allegation that Captain Tavares kicked open the female
 locker room door and watched Specialist [AS] undress is untrue.
 I was present at the time this allegation occurred. The
 configuration of the locker rooms is such that the doors to the
 male and female locker rooms are directly across the hall from
 one another. There is a joke at the hospital that I have a
 small bladder and frequently have to use the restroom. As
 Captain Tavares was leaving the male locker room, I was running
 down the hallway toward the female locker room doing the ‘pee
 dance.’ I was jokingly running and wiggling my hips as though I
 had to pee really badly. Standing in the doorframe of the male
 locker room, Captain Tavares was able to stick his foot out and
 kick open the door to the female locker room so that I could get
 to the bathroom faster. The door opened and I ran inside.
 Specialist [AS] was in the locker room, but she was already
 dressed. The door was only open for a few seconds. Any
 allegation that he was watching Specialist [AS] undress is a
 complete manipulation of the facts.

 With respect to the allegation that appellant called SPC AS by the
nickname “Brown Sugar,” Ms. Moore asserts:

 The ‘Brown Sugar’ comment is also untrue. I was present for
 this allegation also. We were in the operating room preparing
 for a patient. The radio was on. The Rolling Stones song
 ‘Brown Sugar’ was playing. Captain Tavares and I were singing
 the words to the song ‘Brown Sugar’. . . . Captain Taveres did
 not refer to Specialist [AS] as brown sugar. Specialist [AS]
 was not being truthful regarding that instance.
 Although Ms. Moore testified at trial, trial defense counsel did not
ask her questions relating to these incidents. Ms. Moore says in a
separate sworn statement: “If the attorneys had provided clear questions
that identified specific incidents, I would have provided the information
contained in my previous declaration.”

 Appellant’s civilian and appointed trial defense counsel disagree
with Ms. Moore’s recollection that she would have been able to provide the
information contained in her sworn statements. Mr. Dale Saran asserts in a
sworn statement:

 . . . At the Article 32 [hearing], I specifically asked Ms.
 Moore about the incident in the locker room. Ms. Moore
 specifically stated that she did not remember anything about it.
 It was not until after the trial that these claims surfaced
 that she was present for the incident with PFC [NB] and SPC [AS]
 up in the locker room. If Ms. Moore had anything like that to
 present, I certainly would have elicited it both at the Article
 32 hearing and at the court-martial.

 . . . As a final matter, I always, as a matter of habit, ask
 every one of my clients if there is anything else we should
 present before we close our case. Ms. Moore simply did not have
 anything as specific as she now offers.

 Captain Jessica Conn’s sworn statement is similar in content. She
asserts in relevant part:

 We did not elicit this information from Ms. Moore during her
 testimony at trial because she told us before trial she could
 not remember it. . . .

 . . . . Mr. Saran conducted the questioning of Ms. Moore at the
 Article 32(b) investigation, but I offered suggested questions
 before and during the questioning. She was asked if she had
 personal knowledge of what happened in the female locker room,
 and she did not remember it. I am certain that I suggested he
 ask her about ‘singing Brown Sugar’ before Mr. Saran began his
 questioning of Ms. Moore. CPT Tavares, Mr. Saran, and I had a
 conversation about it at the defense table. My suggestion was
 rejected because I was told she did not remember ‘singing Brown
 Sugar.’ Based on that conversation before Mr. Saran questioned
 her, I was satisfied Ms. Moore had already been asked, and she
 did not recall it.
 These sworn statements are in conflict. In essence, Ms. Moore says
that she had specific information about the locker room incident and the
“Brown Sugar” nickname and was not asked about them, but appellant’s trial
defense counsel assert that Ms. Moore was asked about these incidents and
that she did not have specific information about them.

 We cannot resolve a disagreement in post-trial sworn statements on
appeal. Our superior court has emphasized that “a Court of Criminal
Appeals’ factfinding authority under Article 66(c) does not extend to
deciding disputed questions of fact pertaining to a post-trial claim,
solely or in part on the basis of conflicting affidavits submitted by the
parties.” United States v. Fagan, 59 M.J. 238, 242 (C.A.A.F. 2004). In
this case, however, our inability to settle the disagreement does not
require us to remand the case for an evidentiary hearing under United
States v. DuBay, 17 U.S. C.M.A. 147, 37 C.M.R. 411 (1967). In United
States v. Ginn, 47 M.J. 236, 248 (C.A.A.F. 1997), our superior court
announced six principles for determining when a factfinding DuBay hearing
is required or not required. Under the first of these principles, “if the
facts alleged in the affidavit allege an error that would not result in
relief even if any factual dispute were resolved in appellant’s favor, the
claim may be rejected on that basis.” Id. This first principle applies to
the present case. Even if every fact alleged in Ms. Moore’s statements is
true, the statements would not suffice to show ineffective assistance of
counsel.

 “In order to prevail on a claim of ineffective assistance of counsel,
an appellant must demonstrate both (1) that his counsel’s performance was
deficient, and (2) that this deficiency resulted in prejudice.” United
States v. Green, 68 M.J. 360, 361 (C.A.A.F. 2010) (citing Strickland v.
Washington, 466 U.S. 668, 687 (1984)). In this case, for the reasons given
below, we have determined that counsel’s performance was not deficient
based on the analysis outlined in United States v. Polk, 32 M.J. 150, 153
(C.M.A 1991). We therefore have no occasion to address the question of
prejudice.

 In Polk, our superior court identified three questions for determining
whether an appellant has shown his trial counsel to have been ineffective.
The first question under Polk is: “Are the allegations made by appellant
true; and, if they are, is there a reasonable explanation for counsel’s
actions in the defense of the case?” Id. at 153. In this case, even
presuming that allegations by appellant are true—that is, Ms. Moore could
have given exculpatory information at trial about the locker room incident
and the “Brown Sugar” nickname—we can see a reasonable explanation for his
defense attorney’s decision not to investigate these matters further or to
ask her about these matters during trial. In particular, Mr. Saran and CPT
Conn reasonably thought Ms. Moore did not have any information about these
matters. The summarized transcript from the Article 32 hearing records Ms.
Moore as saying: “I don’t recall CPT Tavares kicking open the door to the
locker room.” Given this statement, Mr. Saran and CPT Conn would have no
reason to ask Ms. Moore about the locker room incident. In addition, CPT
Conn’s sworn statement about their conversation with appellant indicates
that CPT Conn and Mr. Saran had no reason to believe that Ms. Moore had
knowledge about the “Brown Sugar” nicknames. In addition, SPC AS testified
at trial that appellant called her “Brown Sugar” on at least three
occasions. Calling Ms. Moore to testify that she and appellant had
discussed a Rolling Stones song by the same name on one occasion therefore
would not have disproved the allegation.

 The second question under Polk is: “[D]id the level of advocacy
‘fall[] measurably below the performance . . . [ordinarily expected] of
fallible lawyers’”? 32 M.J. at 153 (citing United States v. DiCupe, 21 M.J.
440, 442 (C.M.A. 1986), cert. denied, 479 U.S. 826 (1986)). In considering
the quality of advocacy, “we do not scrutinize each and every movement or
statement of counsel,” but instead must look at the overall performance of
counsel throughout the proceedings. United States v. Murphy, 50 M.J. 4, 8
(C.A.A.F. 1998). In this case, even were it incorrect not to press Ms.
Moore for more details, defense counsel still provided effective
assistance. Defense counsel actively cross-examined each of the
government’s witnesses and presented significant exculpatory evidence. The
net result was the panel found appellant not guilty of both of the
specifications of Charge I, which alleged wrongful sexual contact; the
government agreed to the dismissal of the fifth specification of
maltreatment under Charge II; and the military judge found appellant not
guilty of the sole specification of conduct unbecoming an officer under
Charge III on a motion under Rule for Courts-Martial [hereinafter R.C.M.]
917. In addition, although the panel did find appellant guilty of four
specifications of maltreatment, the panel used exceptions to remove some of
the language from three specifications. These favorable results occurred
because appellant’s defense counsel were able to identify significant
weaknesses in the evidence. Our review of the entire record satisfies us
that appellant received a thoroughly effective defense.

 The third question under Polk is: “If ineffective assistance of
counsel is found to exist, ‘is . . . there . . . a reasonable probability
that, absent the errors, the factfinder would have had a reasonable doubt
respecting guilt?’” 32 M.J. at 153. Because we do not find ineffective
assistance of counsel, we do not address this issue or any other issue
concerning prejudice.

 Finally, in our review of the record, we have noticed an error in the
addendum to the staff judge advocate’s recommendation to the convening
authority. In the addendum, the staff judge advocate (SJA) states: “After
careful consideration of the record and the accused’s submission, I find
that the accused does not raise any legal issues in his post-trial
submissions.” This statement is incorrect because appellant clearly
alleges ineffective assistance of counsel in his R.C.M. 1105 submission.
Rule for Courts-Martial 1106(d)(4) directs that “the staff judge advocate
shall state whether, in the staff judge advocate’s opinion, corrective
action on the findings or sentence should be taken when an allegation of
legal error is raised in matters submitted under R.C.M. 1105.” Under this
rule, the SJA should have commented on the allegation of ineffective
assistance of counsel, and should not have said that the submission raises
no legal issues. In our view, however, the error in the addendum is
harmless. Our court recently reiterated that if an allegation of legal
error in R.C.M. 1105 ultimately lacks merit, then “returning the case to
the SJA and convening authority is not necessary” even if “trial defense
counsel had asserted a legal error in [appellant’s] R.C.M. 1105 matters and
the SJA had erred in not commenting on it.” United States v. Ney, 68 M.J.
613, 616 (Army Ct. Crim. App. 2010) (citing United States v. Hill, 27 M.J.
293, 296-97 (C.M.A. 1988)). In this case, for the reasons given above, we
have concluded that the ineffective assistance of counsel assignment of
error lacks merit. Returning the record to the staff judge advocate for a
corrected addendum “would not foreseeably [lead] to a favorable
recommendation by the staff judge advocate or to corrective action by the
convening authority.” See Hill, 27 M.J. at 297.

 On consideration of the entire record, including the affidavits
submitted by both sides, we hold the findings of guilty and the sentence as
approved by the convening authority correct in law and fact. Accordingly,
the findings of guilty and the sentence are AFFIRMED.

 FOR THE COURT:

 MALCOLM H. SQUIRES, JR.
 Clerk of Court