# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, CELTNIEKS, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant First Class RONALD S. NAGY**
**United States Army, Appellant**

ARMY 20140352

Headquarters, Fort Campbell
Steven E. Walburn and Tyesha L. Smith, Military Judges
Lieutenant Colonel Sebastian A. Edwards, Staff Judge Advocate

For Appellant:  Captain Matthew Bernstein, JA; Mr. James Culp, Esquire (on brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Major Melissa Dasgupta Smith, JA; Captain Christopher A. Clausen, JA (on brief).


28 December 2017

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Senior Judge:

Where the record and filings in the case compellingly demonstrate appellant received the benefit of competent and diligent counsel at trial, we reject as "improbable" his claim to the contrary.

A court-martial comprised of officer and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012).[1]  The panel sentenced appellant to a dishonorable discharge,

---

[1] Appellant was originally charged in the alternative of sexually assaulting Ms. ND while she was incapable of consenting due to impairment by alcohol and that condition was known or reasonably should have been known by appellant.  After arraignment but prior to the entry of pleas, the government's motion to dismiss this specification was granted.

confinement for five years, and reduction to the grade of E-1.  The convening authority deferred the automatic forfeitures of pay and allowances until action and approved only so much of the sentence extending to a dishonorable discharge, four years and eleven months confinement, and reduction to the grade of E-1.[2]

Apellant's case is before us for review pursuant to Article 66(c), UCMJ.  Appellant raises two assignments of error.  The first assigned error of ineffective assistance of counsel warrants discussion, but no relief; the second assigned error warrants neither.

## BACKGROUND

On 27 June 2013 about 1930 hours, appellant and Master Sergeant (MSG) SL went to the local American Legion post where MSG SL was a member.  Ms. ND was the bartender at the American Legion and served alcohlic beverages to appellant and MSG SL.  While at the American Legion, Ms. ND engaged in casual conversation with MSG SL, a prior acquantaince, and appellant, who she met for the first time.  According to appellant, they discussed the military and family.  Around 2200, Ms. ND asked appellant and MSG SL if they were planning to stay much longer because she wanted to close the bar early and go to another bar called the Electric Cowboy.  Ms. ND agreed to drive appellant and MSG SL to the Electric Cowboy.

When they arrived at the Electric Cowboy, appellant expected Ms. ND to meet with her friends.  Appellant testified that he was annoyed when Ms. ND stayed with them.  Eventually, Ms. ND begin circulating around the bar talking to other patrons and consuming alcohol.  Occasionally, she would return and have drinks with appellant and MSG SL.  While at the Electric Cowboy, Ms. ND asked appellant to hold her keys because another patron was trying to take her keys.  Additionally, Ms. ND warned appellant about another female who was at the bar and suggested he stay away from her.  According to appellant's testimony, on both of these occasions Ms. ND made physical contact with him and he believed she was flirtatious.  Appellant testified that at this point, he did not believe Ms. ND wanted to have sexual intercourse with him nor did he consider having sexual intercourse with her.

At approximately 0200, Ms. ND and appellant went to the parking lot of the Electric Cowboy.  Appellant testified that once they were in the parking lot, Ms. ND sat in the backseat of her truck and he sat in the front seat.  Appellant explained that Ms. ND wanted him to "frisk" her and she proceeded to place his hands on her breasts.  Ms. ND testifed that she has no recollection of this occurring.

Concluding they were all too intoxicated to drive home, appellant called a taxi.  Around 0300, a taxi driver arrived and drove appellant, MSG SL, and Ms. ND

---

[2] The convening authority granted one month of sentence relief for post-trial processing delay.

to appellant's on-post residence. All three of them entered appellant's residence, and Ms. ND lay on the floor. Master Sergeant SL told Ms. ND to get on the couch and gave her a blanket, after which he left and returned to his residence across the street. As MSG SL was leaving appellant's residence, appellant was going upstairs.

Sometime later, appellant went downstairs in his residence, saw Ms ND, asked if she was okay, and invited her upstairs. At this point, appellant testified he had "a lapse in judgment" and believed something sexual would happen, although he never expressed his desires to Ms. ND. On cross-examination, appellant admitted that once they were in the bedroom, he lay on the bed with Ms. ND and "played the slick guy move" where "[he] put [his] left arm over her top, and then at that point that's when she turns and looks up and faces [him]." Appellant claimed the ensuing sexual intercourse was consensual. Ms. ND testified that she told him she did not want to do this, and it was not okay because he was married and she had a boyfriend. She further testified that she did not fight him or tell him no.

On appeal, appellant avers his counsel were ineffective because they failed to address inconsistencies in the testimony of the taxi driver[3] and Ms. ND, and failed to investigate Ms. ND's report of a prior sexual assault. Specifically, appellant claims Ms. ND was inconsistent about her level of intoxication and version of events on 28 June 2013. In addition, appellant alleges Ms. ND was untruthful in her report of a prior assault. While Ms. ND was cross-examined on her level of intoxication and her version of events involving appellant, her report of a prior sexual assault was excluded under Military Rule of Evidence [Mil. R. Evid.] 412.

According to appellant, evidence of Ms. ND's prior report is relevant and admissible because Ms. ND's claim was false and she lied under oath during the Mil. R. Evid. 412 hearing. Appellant posits that these lies are admissible under Mil. R. Evid. 608. We disagree because there is no evidence that proves Ms. ND's report of a prior sexual assault was false or that she lied during the Mil. R. Evid. 412 hearing.

**LAW AND DISCUSSION**

The Sixth Amendment guarantees an accused the right to effective assistance of counsel. *United States v. Gooch*, 69 M.J. 353, 361 (C.A.A.F. 2011) (citing *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001)). To establish his counsel were ineffective, appellant must demonstrate "both (1) that his counsel's performance was

---

[3] The taxi driver testified about his interaction with appellant, MSG SL, and Ms. ND during the drive to appellant's house. He also testified about picking up Ms. ND from appellant's house and taking her to the military police station. The inconsistencies appellant now raises relate to whether or not Ms. ND was intoxicated. The charge relating to sexual assault due to impairment by alcohol was dismissed prior to arraignment. The taxi driver had no information about whether the sexual intercourse was consensual.

deficient, and (2) that this deficiency resulted in prejudice." *United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "We review both prongs of the *Strickland* analysis de novo." *United States v. Mazza,* 67 M.J. 470, 474 (C.A.A.F. 2009) (citations omitted).

"On appellate review, there is a 'strong presumption' that counsel was competent." *United States v. Grigoruk*, 56 M.J. 304, 306-07 (C.A.A.F. 2002) (quoting *Strickland*, 466 U.S. at 689). "We do not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine whether counsel made an objectively reasonable choice in strategy from the available alternatives. Similarly, we must remain mindful that counsel have wide latitude . . . in making tactical decisions." *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (internal citations and quotation marks omitted). Our analysis of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. As a general matter we "'will not second-guess the strategic or tactical decisions made at trial by defense counsel.'" *United States v. Anderson*, 55 M.J. 198, 202 (C.A.A.F. 2001) (quoting *United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993)). To overcome this presumption, an appellant "bears the burden of establishing the truth of the factual allegations that would provide the basis for finding deficient performance." *United States v. Tippit*, 65 M.J. 69, 76 (C.A.A.F. 2007) (citing *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

The *Strickland* framework was adopted by the military justice system and further developed into the following three-pronged test to determine whether an appellant has overcome the presumption of competence and shown prejudice:

> (1) Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions?";
>
> (2) If the allegations are true, did defense counsel's level of advocacy fall "measurably below the performance . . . [ordinarily expected] of fallible lawyers?"; and
>
> (3) If defense counsel was ineffective, is there a "reasonable probability that, absent the errors," there would have been a different result?

*Grigoruk*, 56 M.J. at 307 (quoting *Polk*, 32 M.J. at 153).

In addition, our review of ineffectiveness is not based on a single act of counsel, but by considering counsel's overall performance. *See United States v. Murphy*, 50 M.J. 4, 8 (C.A.A.F. 1998) ("When we look for effective assistance, however, we do not scrutinize each and every movement or statement of counsel. Rather, we satisfy ourselves that an accused has had counsel who, by his or her representation, made the adversarial proceedings work.").

Under the circumstances of this case, we see no need to order affidavits from counsel (regarding their trial strategy or tactics) or a fact-finding hearing pursuant to *United States v. DuBay*, 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967). The facts in appellant's allegations—even if true—"would not result in relief . . . ." *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). Appellant's submission "consists . . . of speculative [and] conclusory observations . . . ." *Id.* Furthermore, "the appellate filings and the record as a whole 'compellingly demonstrate' the improbability of [appellant's allegations.]" *Id.* While we do not judge counsel's performance based on the outcome of their trial strategy, our review of counsel's performance from the entire record, shows their combined performance "made the adversarial proceedings work." *Murphy*, 50 M.J. at 8.

The defense theory at trial was that the sexual intercourse between appellant and Ms. ND was consensual or, in the alternative, that appellant made a reasonable mistake of fact as to consent. The defense argued Ms. ND fabricated the allegations against appellant because she suffered from a personality disorder[4] or, in the alternative, she was an untruthful person.

Prior to trial, defense counsel filed a Mil. R. Evid. 412 motion seeking to introduce evidence of the prior report of sexual assault by Ms. ND. The defense wanted to show Ms. ND was untruthful in her prior report. The defense also called a witness who recounted a statement Ms. ND allegedly made to her, but Ms. ND denied making the disputed statement. No further evidence was offered to verify the credibility of the witness or Ms. ND. Accordingly, the military judge correctly ruled neither of these collateral allegations made it any more or less likely that Ms. ND was sexually assaulted by appellant. In a supplemental Mil. R. Evid. 412 motion, defense counsel again sought to admit evidence about Ms. ND's report of a prior sexual assault. The military judge once again found the evidence was irrelevant, but did not preclude it for pre-sentencing should appellant be convicted.

At trial, the defense called Ms. ND's estranged husband, with whom she had an ongoing child-custody dispute, to testify that she is untruthful. A former co-worker who worked with Ms. ND for seven months also testified that Ms. ND was

---

[4] The defense filed a motion prior to trial under Mil. R. Evid. 513. The military judge ruled the opinions concerning Ms. ND's mental health diagnosis were constitutionally required. To support their theory of a personality disorder, the defense cross-examined the government's expert in forensic psychiatry and called a defense expert in forensic psychiatry. Although the defense expert testified Ms. ND might have traits of several different personality disorders, neither the defense expert nor the government expert testified that Ms. ND currently suffered from or was previously diagnosed with a personality disorder.

untruthful. Neither witness offered any information about the disputed statement Ms. ND allegedly made or the report of a prior sexual assault.

At a post-trial Article 39(a), UCMJ, session,[5] a different pair of defense counsel argued the previous defense counsel did not exercise due diligence in their pretrial preparation because they failed to contact the police department about the report of a prior sexual assault. To support this claim, an affidavit from a detective involved in the investigation was submitted. The defense counsel argued, and the military judge agreed, the former defense counsel could have discovered with due diligence the affidavit of the detective.

Ultimately, the military judge found in reference to the detective's affidavit:

> [T]he statement itself is hearsay. While the statement may be considered for the purpose of motions, the statement would be inadmissible at trial. However, the statement, had it been discovered, may have been considered for the purposes of ruling on the defense's [Mil. R. Evid.] 412 motion. [The detective could also have testified regarding his investigation at the motions hearing.]
>
> . . . Had the statement been discovered by the defense, it may have been used to help establish that Mrs. ND made prior false allegations of sexual assault. Nevertheless, the statement even when coupled with Mrs. ND's testimony, including her testimony during the [Mil. R. Evid.] 412 hearing, without more, is not enough for the Court to even now conclude that Mrs. ND made false allegations of sexual assault. Consequently, this evidence remains barred by [Mil. R. Evid.] 412.

(footnotes omitted).

It is clear from the record that the original defense counsel were aware of Ms. ND's report of a prior sexual assault. They filed two Mil. R. Evid. 412 motions addressing this fact. The evidence not raised by the defense counsel at trial was the information contained in the detective's affidavit which was created after trial, but this defense tactic was reasonable because the military judge already ruled this evidence was inadmissible. Even if the detective's affidavit was prepared before trial and the defense counsel tried to introduce the detective's affidavit or testimony

---

[5] A post-trial Article 39(a), UCMJ, session was ordered to address the defense request for a new trial based on information from an administrative investigation of a witness and an affidavit from a detective. The military judge concluded, even in light of the totality of this new evidence, a new trial was unwarranted.

at trial, the result would have been the same. "Evidence of an alleged victim's prior accusation of sexual assault is only admissible if the prior accusation is shown to be false. This is true whether the defense seeks to introduce the evidence as an exception to [Mil. R. Evid.] 412 or to show the alleged victim's modus operandi, motive, or character evidence for lack of truthfulness." *United States v. Erikson*, 76 M.J. 231, 234 (C.A.A.F. 2017); *See also United States v. Valez*, 48 M.J. 220, 227 (C.A.A.F. 1998).

In sum, the information in the detective's affidavit lends no credence to whether or not there was a prior, false allegation by Ms. ND. Despite the fact that there are some inconsistencies between Ms. ND's recollection of the previous sexual assault and the detective's affidavit, there is no evidence that demonstrates Ms. ND was untruthful at the time she contacted law enforcement or that the prior sexual assault did not occur. Instead, the affidavit shows Ms. ND did not continue her contact with law enforcement and no further investigation of her prior report was conducted. "The mere filing of a complaint is not even probative of the truthfulness or untruthfulness of the complaint filed. Thus, its relevance on the question of credibility of a different complaint in an unrelated case, such as appellant's, entirely escapes us." *United States v. Velez*, 48 M.J. 220, 227 (C.A.A.F. 1998) (citation omitted).

Applying our superior court's three-pronged test to determine whether appellant has overcome the presumption of competence and shown prejudice under the *Strickland* framework, we find: 1) there was a reasonable explanation for counsel's actions; 2) counsel's level of advocacy did not fall measurably below the performance ordinarily expected of fallible lawyers; and 3) there was no reasonable probability that, absent the alleged errors, the result would have been different. *See Grigoruk*, 56 M.J. at 307 (quoting *Polk*, 32 M.J. at 153).

**CONCLUSION**

The findings of guilty and the sentence are AFFIRMED.

Judge CELTNIEKS and Judge SCHASBERGER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

7