# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 39174**

————————————

**UNITED STATES**
*Appellee*

v.

**Anto A. ADAM**
First Lieutenant (O-2), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 7 February 2018

————————————

*Military Judge:* Marvin W. Tubbs II.

*Approved sentence:* Dismissal and confinement for 40 days. Sentence adjudged 18 July 2016 by GCM convened at Tinker Air Force Base, Oklahoma.

*For Appellant:* Ernesto Gapasin, Esquire.

*For Appellee:* Major Rebecca A. Magnone, USAF; Major Mary Ellen Payne, USAF; Major Meredith L. Steer, USAF.

Before MAYBERRY, HARDING, and SPERANZA, *Appellate Military Judges.*

Judge SPERANZA delivered the opinion of the court, in which Chief Judge MAYBERRY and Senior Judge HARDING joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

SPERANZA, Judge:

A military judge sitting as a general court-martial found Appellant guilty, consistent with his pleas pursuant to a pretrial agreement, of providing three false official statements to a military investigator and stealing money from

the Army and Air Force Exchange Service (AAFES) on divers occasions, in violation of Articles 107 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 921. The military judge sentenced Appellant to a dismissal and 40 days of confinement. Consistent with the terms of the pretrial agreement, the convening authority approved the adjudged sentence.

On appeal, Appellant claims that (A) his sentence is inappropriately severe and (B) he was denied effective assistance of counsel. We disagree with Appellant's assertions, find no prejudicial error, and affirm.

## I. BACKGROUND

Appellant's robust history of returning items to the Tinker Air Force Base AAFES Base Exchange without a receipt landed him atop the store's suspected fraud list—and for good reason. Appellant would place 50–75 percent "clearance" stickers on items he believed should be on sale, purchase them at the reduced price, and later return the items without a receipt. The store refunded Appellant the full price of the items on gift cards.

Appellant's scheme finally came to an end when he was video-recorded placing items on "clearance." After being stopped by the store's loss prevention manager, Appellant was questioned by a military investigator and promptly lied about his misconduct.

## II. DISCUSSION

### A. Sentence Appropriateness

The military judge merged all three specifications of Appellant's false official statement charge for the purposes of sentencing. Additionally, the military judge found that each occasion alleged in the larceny charge did not individually involve theft of money valued at over $500, even though Appellant stole well over $1,000 in total. Therefore, the military judge determined Appellant did not face an enhanced sentence, as is required when an accused commits larceny involving nonmilitary property valued at over $500. Consequently, Appellant faced a maximum punishment that included a dismissal and confinement for five and a half years.

In exchange for Appellant's offer to, among other things, plead guilty, the convening authority agreed not to refer additional charges against Appellant and not to approve more than 60 days of confinement. The pretrial agreement placed no other limitations on Appellant's sentence.

Upon Appellant's request, the convening authority waived automatic forfeitures for the benefit of Appellant's wife and son while Appellant served his 40 days of confinement.

Appellant now contends that "[d]espite the fact that [his] sentence is the result of a pretrial agreement, the adjudged sentence of a dismissal in conjunction with the confinement for forty days is inappropriate for the charged offenses and for the nature of the offenses and the character of the offender." In support of this claim, Appellant cites, *inter alia*, the resources his guilty plea saved the Government; his "bright career and accomplishments;"[1] the federal convictions he incurred; his crimes did not involve victims, as he "did not commit more egregious offenses such as sexual assault, or assault and battery against another human being;" his acceptance of responsibility; his restitution payment of over $1,500 to AAFES; and, the burden his sentence will have on his future. Accordingly, Appellant asks us to set aside his dismissal.

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)).

We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(c), UCMJ, 10 U.S.C. § 866(c). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (quoting *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009)). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

Indeed, Appellant did not sexually assault or otherwise injure another human being; however, he—an officer in the United States Air Force—devised and executed a brazen scheme to steal money from his installation's exchange and then lied about it. His punishment is commensurate with his offenses. Having given individualized consideration to the nature and seriousness of these crimes, Appellant's record of service, all other matters contained in the record of trial, and, importantly, Appellant, we conclude the sentence is not inappropriately severe based on the facts and circumstances of this particular case.

---

[1] Appellant's brief cites to the extenuation and mitigation evidence offered by Appellant's trial defense counsel at Appellant's court-martial, to include ten character letters.

**B. Effectiveness of Counsel**

Appellant was represented by an experienced trial defense counsel. Early in his representation of Appellant, trial defense counsel advised Appellant about his right to call witnesses, both civilian and military, at his court-martial, and instructed Appellant to identify such potential witnesses. Leading to trial, trial defense counsel and defense paralegals reiterated this advice to Appellant, both orally and in writing. The advice provided to Appellant included his right to "call witnesses for [him] or use letters and character-reference type written statements, or both" at any sentencing proceedings. Appellant was again specifically instructed to identify "any and all potential character witnesses who can help [him]."

According to Appellant, his trial defense counsel "did mention early in the case to start thinking about character witnesses for trial" and Appellant acknowledged receiving "paperwork from [trial defense counsel] and his paralegal that [he] had the right to call witnesses to testify on [his] behalf." Based on this advice, Appellant claims he had "several military witnesses in mind from the beginning of the process who were willing to testify on [his] behalf as to [his] good military character, duty performance and rehabilitative potential." Appellant did not have any questions about this advice, but maintains he never received a deadline to provide the names of these witnesses to trial defense counsel, even though he did obtain character letters from some of these witnesses.

Shortly after charges were preferred against Appellant, his trial defense counsel submitted a resignation in lieu of court-martial (RILO) request on Appellant's behalf. While Appellant's RILO request processed, trial preparations continued. Approximately one month before the scheduled trial date, trial defense counsel was required to submit a witness list on that day. Trial defense counsel informed Appellant that he intended to place Appellant's wife on the witness list and told Appellant to "let me know if you have any questions." Appellant did not further identify any other witnesses for trial defense counsel.

Despite his negative response, Appellant was instructed once again a few weeks later by a defense paralegal to "please let us know about any witnesses either live testimony or character letters." Appellant was also provided a "trial decisions memorandum." This memorandum directed Appellant to review the memorandum's content in its entirety—to include all attachments—and to "*not initial or sign, indicating your understanding and choices, until [Appellant and trial defense counsel] are involved in face-to-face final trial preparation together*." (Emphasis in original.) The memoranduam further advised Appellant to "*only sign and initial if and when [he] fully underst[ood] [his] rights, [his] decisions and this information*." (Emphasis in original.)

4

Appellant's request to resign was denied and Appellant's case proceeded to trial. In preparation, trial defense counsel interviewed members of Appellant's unit, including individuals who wrote character letters for Appellant. Trial defense counsel determined that calling these military members as witnesses was ill-advised because he "learned that [Appellant] had given them the impression that his misconduct was more of a one-time issue rather than a series of continuing acts" and that "[m]any of them believed that the situation was a mistake and were not aware that [Appellant] had lied to security forces personnel."

About a week before trial, Appellant negotiated the pretrial agreement with the convening authority. In his offer for pretrial agreement, Appellant certified that he was "satisfied with [his defense counsel], who ha[d] advised [him] with respect to th[e] offer, and consider[ed] [defense counsel] competent to represent [him] in th[e] court-martial."

The day before trial, trial defense counsel discussed the "trial decisions memorandum" with Appellant. The memorandum included five attachments, including one entitled "Character Evidence/Defense Case." Appellant certified his understanding of the memorandum's advice and content by initialing and signing the document. On the first page of the memorandum, trial defense counsel advised Appellant, in pertinent part, of the following:

> I am relying on you to tell me if you have any questions or concerns about our trial preparation, trial strategy or trial decisions, and if there is something you don't understand about my advice or explanations.
>
> …
>
> Please review these memos, think about these choices, and ask me any questions you have.
>
> …
>
> In addition, please only sign and initial if and when you fully understand your rights, your decisions and this information.

In general, Appellant certified that he was "truly satisfied" with his trial defense counsel and did not have any questions or concerns about trial defense counsel's advice, preparation, the case, or case strategy. Specifically, Appellant certified his understanding of "Character Evidence" by initialing the following:

> I understand we can present evidence about my character during the findings and/or sentencing portion of my trial. This character evidence can take the form of *live witnesses*, perfor-

5

mance reports, awards and decorations, affidavits or, during sentencing, letters written by those who know me best.

I also understand that if we put on evidence of my good character in any phase of trial the government can rebut that evidence by providing what they believe to be evidence of my bad character—which might not otherwise have been admissible against me at trial. This includes any past uncharged misconduct or violations of rules. This is called "opening the door" to bad character evidence.

My attorney and I have discussed possible sentencing, including unsworn statements, *witnesses* and evidence (OPRs, award & decs, certificates, *witnesses*, letters, coins, "attaboys," etc.)

(Emphasis added.)

Finally, Appellant certified his "Decisions about Defense Case" by initialing the following:

I understand that, except for the decisions made by me in this memo, case strategy decisions are left to my attorney. That being said, my attorney has asked me for my inputs regarding a possible defense case and has informed me that I need to let him know if I have any questions or concerns before we enter trial. We have discussed my thoughts and, going into trial, I understand, and agree with, my attorney's preparation and strategy.

At trial and in response to the military judge's questions, Appellant confirmed that he fully consulted with trial defense counsel; he received the full benefit of his counsel's advice; he was satisfied his defense counsel's advice was in his best interest; and he was satisfied with his trial defense counsel.

Before entering the sentencing phase of the trial, the military judge advised Appellant of his right to present matters in extenuation and mitigation for the military judge's consideration, to include "testimony of witnesses." Appellant confirmed that he understood this right. In addition to other documentary evidence and an unsworn statement, Appellant offered ten character letters as evidence at sentencing.

Now on appeal, Appellant claims that his trial defense counsel "was ineffective by failing to properly prepare for presentencing because trial defense counsel did not call military witnesses to testify and did not give Appellant sufficient notice of when requests for production of character witnesses were to be served on the Government." Appellant argues that "[o]ne glaring issue is the fact that despite the letters of support Appellant received, no one was

produced to testify either in court or even via telephone." Appellant contends that "[t]his lack of proper mitigation evidence at trial negatively affected his chances of remaining in the service."[2] While acknowledging he "was aware that witnesses could testify on his behalf because [his trial defense counsel] and his paralegal advised him of this," Appellant nonetheless complains that "this advice came early in the representation" and "in his mind, [he] did not believe [they] ever had a scheduled trial date while [his] RILO was processing." Therefore, Appellant was "surprised" when he had to produce a "witness list" and did not have enough time to identify potential witnesses for his trial defense as requested. According to Appellant, his trial defense counsel failed to properly counsel him "as to how his RILO application would or would not affect the court-martial" and failed to "properly advise[ ] that he would still have to prepare for trial by obtaining all of his witnesses." Appellant alleges "[he] was essentially left in the dark."

In response to Appellant's claims, we ordered and received a declaration from Appellant's trial defense counsel. Trial defense counsel's declaration addressed the specific allegations raised by Appellant and included the "trial decision memorandum" initialed and signed by Appellant.

The Sixth Amendment guarantees Appellant the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)).

We review allegations of ineffective assistance of counsel de novo and utilize the following three-part test to determine whether the presumption of competence has been overcome:

1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?

2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?

---

[2] We note the irony in Appellant partially relying on the extenuation and mitigation evidence produced by trial defense counsel to demand sentence relief and then subsequently complaining that trial defense counsel's sentencing preparation and presentencing case was so deficient as to constitute ineffective assistance of counsel.

3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)).

The record in Appellant's case, to include the declaration of his trial defense counsel and memoranda signed by Appellant, refutes Appellant's ineffective assistance of counsel allegations.[3] Trial defense counsel's explanations and actions in this case were eminently reasonable, and his level of advocacy was well within the performance ordinarily expected of fallible lawyers. Appellant was specifically advised early and often about his right to call witnesses on his behalf. Appellant also had plenty of opportunities to raise any concerns throughout the trial process. Instead, he repeatedly confirmed that he understood his rights, to include calling character witnesses at sentencing; he was satisfied with his defense counsel's preparation and advice; and he was satisfied with his trial defense counsel. Any concerns Appellant harbored with respect to his counsel's preparation, his counsel's advice, his ability to present witness testimony, or the impact of his RILO application on his trial remained "in his mind" until after trial.

Even if trial defense counsel's representation was ineffective as alleged by Appellant, we find no reasonable probability that testimony from unnamed witnesses about Appellant's "good military character, duty performance or rehabilitative potential" would have produced a different, more favorable result for Appellant. To the contrary and as indicated by Appellant's trial defense counsel, a more reasonable probability existed that cross-examination of these potential witness would have negatively impacted Appellant's sentence.

Accordingly, we find Appellant's trial defense counsel competently represented Appellant. Appellant's counsel was presumed to be competent and Appellant failed to overcome that presumption.

## III. CONCLUSION

The findings of guilt and the sentence are correct in law and fact and no error materially prejudicial to the substantial rights of Appellant occurred.

---

[3] Having applied the principles announced in *United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997), and considering the entire record of Appellant's trial, a guilty plea during which he expressed his satisfaction with trial defense counsel, we find we can resolve the issues raised by Appellant without additional fact-finding.

Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

KATHLEEN M. POTTER
Deputy Clerk of the Court