# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 39794**

_____

**UNITED STATES**
*Appellee*

**v.**

**Radell J. MITCHELL**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 7 January 2021

_____

*Military Judge:* Matthew P. Stoffel.

*Sentence:* Sentence adjudged on 15 July 2019 by GCM convened at Misawa Air Base, Japan. Sentence entered by military judge on 31 July 2019: Dishonorable discharge, confinement for 26 months, and reduction to E-1.

*For Appellant:* Captain Alexander A. Navarro, USAF.

*For Appellee:* Major Jessica L. Delaney, USAF; Mary Ellen Payne, Esquire.

Before MINK, KEY, and ANNEXSTAD, *Appellate Military Judges.*

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge MINK and Judge KEY joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

ANNEXSTAD, Judge:

A general court-martial composed of a military judge sitting alone convicted Appellant, in accordance with his pleas and pursuant to a pretrial

agreement (PTA), of one charge and specification of wrongful possession of child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 26 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. In accordance with the PTA, the convening authority disapproved the part of the sentence extending to total forfeitures, but approved the remainder of the adjudged sentence.[2]

On appeal, Appellant raises four issues before this court: (1) whether Appellant is entitled to sentence-appropriateness relief due to post-trial delay, specifically, Appellant claims that his due process rights were violated when his case was not docketed with this court within 30 days of the convening authority's action as required by *United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F. 2006); (2) whether Appellant was denied the effective assistance of counsel under the Sixth Amendment[3] for failing to object to the stipulation of fact that contained evidence of uncharged sexual misconduct; (3) whether Appellant was denied the effective assistance of counsel under the Sixth Amendment when trial defense counsel provided erroneous legal advice during clemency; and (4) whether Appellant's sentence is inappropriately severe.[4] We find no error that resulted in material prejudice to Appellant's substantial rights, and affirm the findings and sentence.

## I. BACKGROUND

On 15 July 2019, Appellant, a maintainer and quality assurance inspector at Misawa Air Base, Japan, pleaded guilty to one charge and specification for wrongfully possessing child pornography in violation of Article 134, UCMJ.

---

[1] References to the punitive articles of the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise specified, all other references to the UCMJ and all references to the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Pursuant to the PTA the convening authority deferred the adjudged reduction in grade and all adjudged and mandatory forfeitures of pay and allowances from 29 July 2019 until the date the entry of judgement (EoJ) was signed by the military judge. Also in accordance with the PTA, the convening authority waived all of the automatic forfeitures for a period of six months, release from confinement, or expiration of Appellant's term of service, whichever was sooner, with the waiver commencing on the date the EoJ was signed by the military judge.

[3] U.S. CONST. amend. VI.

[4] Appellant personally raises issues (2) through (4) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Since issues (2) and (3) require the same analysis, we consider them together.

At trial, Appellant admitted that he downloaded child pornography using a peer-to-peer program called "Shareaza." Appellant stated that he began viewing legal, adult pornography, but eventually transitioned to viewing pornography with younger women and eventually children. Appellant further admitted that he possessed, viewed and downloaded pornography with children as young as seven years old having vaginal and oral sex with adult men. Appellant admitted that he searched for and downloaded child pornography on his laptop and that he possessed 62 files with "hash values" from the National Center for Missing and Exploited Children (NCMEC), which indicated that the files were known depictions of exploitation involving identified child victims. Appellant also admitted that he possessed 100 additional files on his laptop that contained images of child pornography and child erotica that were not associated with a NCMEC hash value.

In addition to the files on his laptop, Appellant also admitted that he possessed 23 files with NCMEC-positive hash values on an external hard drive that he kept in a packing box in his closet. Appellant admitted that the hard drive contained 16,000 other files of pornography, with at least 2,000 image files of child pornography and 100 videos of child pornography.

The primary evidence at trial consisted of Appellant's sworn statements to the military judge and a six-page stipulation of fact with five attachments totaling 56 pages. The attachments included a report of investigation (ROI) from the Naval Criminal Investigative Service, Appellant's four-page written confession to law enforcement investigators, redacted excerpts from the Air Force Office of Special Investigations' ROI, a report from the Defense Cyber Crime Center's Cyber Forensic Laboratory (DC3/CFL), and a digital video disc (DVD) with contraband material.

## II. DISCUSSION

### A. Post-Trial Delay

Appellant contends that he is entitled to sentence relief because his due process rights were violated when his case was not docketed with this court within 30 days of the convening authority's action as required by *Moreno*. We disagree.

#### 1. Additional Background

Appellant was sentenced on 15 July 2019. On 22 July 2019, Appellant submitted his request for clemency. The convening authority signed the decision on action memorandum to the military judge on 29 July 2019, and the military judge signed the entry of judgment on 31 July 2019. The court reporter certified the transcript on 19 August 2019. On 19 September 2019, a copy of the record of trial (ROT) was sent to Appellant. The case was subsequently

docketed with this court on 21 October 2019. Appellant never requested speedy processing.

In his 14 July 2020 declaration before this court, Appellant claims that the delay in docketing his case with this court has negatively impacted both his ability to begin his efforts to administratively upgrade his discharge characterization and his ability to apply for veteran's medical benefits for his service-related medical issues.[5] Appellant claims that the delay in the outcome of his appeal has caused him "particularized anxiety and apprehension" because of his "numerous mental and physical health ailments." Appellant asks this court to grant sentence relief.

### 2. Law and Analysis

This court reviews de novo whether an appellant's due process rights are violated because of post-trial delay. *Moreno*, 63 M.J. at 135 (citations omitted). In the absence of a due process violation, this court considers whether relief for excessive post-trial delay is warranted consistent with this court's authority under Article 66(d)(2), UCMJ, 10 U.S.C. § 866(d)(2). *See United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002); *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016).

In *Moreno,* the United States Court of Appeals for the Armed Forces (CAAF) identified thresholds for facially unreasonable delay during three particular segments of the post-trial and appellate process. 63 M.J. at 141–43. Specifically, the CAAF established a presumption of facially unreasonable delay where: (1) the convening authority did not take action within 120 days of the completion of trial, (2) the record was not docketed with the Court of Criminal Appeals within 30 days of the convening authority's action, or (3) the Court of Criminal Appeals did not render a decision within 18 months of docketing. *Id.* at 142.

We note at the outset, Appellant's offense occurred between on or about 21 July 2016 and on or about 31 May 2018. The convening authority referred the charge and specifications to trial by general court-martial on 3 June 2019. Accordingly, Appellant's court-martial was generally subject to the procedures provided for in the 2019 version of the *Manual for Courts-Martial*. We also agree that the due process right to timely post-trial and appellate review the CAAF recognized and sought to safeguard in *Moreno* endures under the new post-2019 procedures.

---

[5] Since the issue was raised in the record but was not fully resolvable by those materials, the affidavits submitted by the Government and Appellant were considered consistent with *United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020).

As we recently noted in *United States v. Livak*, ___ M.J. ___, No. ACM S32617, 2020 CCA LEXIS 315, at \*6–7 (A.F. Ct. Crim. App. 14 Sep. 2020) (citation omitted), "the specific requirement in *Moreno* which called for docketing to occur within 30 days of action no longer helps us determine a facially unreasonable delay under the new procedural rules," but the aggregate standard threshold established by the majority in *Moreno* of 150 days from Appellant's sentence to docketing is still applicable in determining a facially unreasonable delay. "This 150-day threshold appropriately protects an appellant's due process right to timely post-trial and appellate review and is consistent with our superior court's holding in *Moreno*." *Id.* at \*7.

In the case before us, the entire period from the end of Appellant's trial to docketing with this court took 98 days. Since this is well under the 150-day threshold discussed above, we conclude no facially unreasonable delay occurred.

Assuming *arguendo* that there was a facially unreasonable delay from convening authority action to docketing, we will assess whether there was a due process violation. In conducting our analysis, we have considered the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972): (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice. "[These] four factors are balanced, with no single factor being required to find that post-trial delay constitutes a due process violation." *Moreno*, 63 M.J. at 136 (citing *Barker*, 407 U.S. at 533) (additional citation omitted). Additionally, where an appellant has not shown prejudice from the delay, we cannot find a due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). After balancing the *Barker* factors, we find no prejudice and no violation of Appellant's due process rights.

Recognizing our authority under Article 66(d)(2), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. *See United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002). After considering the factors enumerated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude it is not.

## B. Ineffective Assistance of Counsel

### 1. Additional Background

Appellate personally raises two grounds for ineffective assistance of trial defense counsel in that Appellant's trial defense counsel: (1) failed to object to the stipulation of fact that contained some material related to uncharged sexual misconduct; and (2) provided erroneous legal advice during clemency.

On 7 August 2020, our court ordered both of Appellant's trial defense counsel, Mr. WK and Captain (Capt) MM, to provide responsive declarations. We have considered whether a post-trial evidentiary hearing is required to resolve any factual disputes between Appellant's assertions and his trial defense team's assertions. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). We find a hearing unnecessary to resolve Appellant's claims.

**2. Law**

The Sixth Amendment guarantees an accused the right to effective assistance of counsel. *United States v. Gilley*, 56 M.J. 113, 124 (C.A.A.F. 2001). In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)).

We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Id.* (alterations in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)). The burden is on the appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted).

The United States Supreme Court has defined the prejudice element of an ineffective assistance of counsel claim as

> focus[ing] on the question whether counsel's performance renders the result of the trial unreliable or the proceedings fundamentally unfair. Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of a substantive or procedural right to which the law entitles him.

*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citations omitted).

"Defense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so." *Datavs*, 71 M.J. at 424 (citing *Gooch*, 69 M.J. at 362–63) (additional citation omitted). In reviewing the decisions and actions of trial defense counsel, this court does not second-guess strategic or tactical decisions. *See United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993) (citations omitted). It is only in those limited circumstances where a purported "strategic" or "deliberate" decision is unreasonable or based on inadequate investigation that it can provide the foundation for a finding of ineffective assistance. *See United States v. Davis*, 60 M.J. 469, 474 (C.A.A.F. 2005).

When an appellant alleges ineffective assistance of counsel after pleading guilty at trial, an appellant must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

In the context of post-trial processing, an appellant must make "some colorable showing of possible prejudice." *United States v. Lee*, 52 M.J. 51, 53 (C.A.A.F. 1999) (citing *United States v. Wheelus*, 49 M.J. 284, 289 (C.A.A.F. 1998)). An appellant must demonstrate prejudice by more than "sheer speculation." *United States v. Brown*, 54 M.J. 289, 293 (C.A.A.F. 2003).

### 3. Analysis

We find each of the claims of ineffective assistance of counsel to be without merit.

#### a. Failure to Object to the Stipulation of Fact

Appellant's first contention is that his trial defense counsel were ineffective by failing to object to the stipulation of fact. Appellant claims that the DC3/CFL report, which was attached to the stipulation of fact, contained evidence of uncharged misconduct, specifically that Appellant had exposed his penis to a 13-year-old girl during a video chat.[6] In his declaration, Appellant states that he was assured by his trial defense counsel that information relating to the "indecent exposure allegation would not be presented at trial." Appellant now asserts that had he realized that some information was contained in an attachment to the stipulation of fact, he would not have signed the document. Appellant does not state in his declaration that he would have withdrawn from the PTA and not pleaded guilty. Appellant also does not deny he was afforded

---

[6] The Charge and Specification concerning Appellant's alleged indecent exposure of his genitalia to a 13-year-old girl, an alleged violation of Article 120c, UCMJ, 10 U.S.C. § 920c, was dismissed prior to the referral of charges on 3 June 2019.

the opportunity to review the stipulation of fact and its attachments before he signed the document.

Both of Appellant's trial defense counsel provided declarations on this issue. As addressed by both counsel, the process of negotiating the stipulation of fact was complex. They explained that in order for Appellant to keep the benefit of the PTA, he was required to enter into a reasonable stipulation of fact. They explained that their primary focus was to limit the number of images presented to the military judge, highlight mitigating factors such as Appellant's cooperation with investigators, and minimize the inclusion of damaging facts. Capt MM stated that he argued against the inclusion of the DC3/CFL report as an attachment to the stipulation of fact, but felt that in order to maintain the benefit of the PTA, it was not unreasonably harmful that the DC3/CFL report was included as an attachment. Both counsel stated that Appellant was provided an opportunity to review the stipulation of fact and its attachments the night before trial and that he had as much time as he needed to review them. Both counsel stated that Appellant had a number of concerns regarding the stipulation of fact, but the concerns were largely based on his desire to have the quantity of legal pornography he possessed included in the stipulation. Mr. WK attached an email to his declaration that he sent to trial counsel in the case that demonstrates Appellant's primary concern at the time of trial was including mitigating evidence in the stipulation of fact. Both trial defense counsel also provided that Appellant never objected to the inclusion of the DC3/CFL report as an attachment.

At trial, Appellant was again provided the opportunity to review the stipulation of fact, including all of the attachments. The military judge, *sua sponte*, took a recess to give Appellant additional time to review the stipulation of fact and its attachments. Appellant then confirmed to the military judge that he had reviewed the stipulation of fact, including the attachments, and that everything in the stipulation of fact was true. The military judge specifically asked Appellant "[i]s there anything in the stipulation that you do not wish to admit is true?" Appellant answered "No, Your Honor." Trial defense counsel was then asked if they had any objections to the stipulation of fact and replied "No, Your Honor."

We find that Appellant has failed to meet his burden of showing deficient performance. The declarations and attachments submitted by trial defense counsel indicate that they made reasonable tactical decisions in the negotiation of both the PTA and the stipulation of fact, including the decision on what documents would be attached to the stipulation of fact. They did so as part of extensive negotiations in which they managed to limit the number of highly prejudicial images the military judge would view, and also ensured that significant mitigating evidence was included in the stipulation of fact. This

court will not second guess reasonable tactical decisions by defense counsel. There are reasonable explanations for defense counsel's actions and advice, and their individual and combined level of advocacy on Appellant's behalf was not "measurably below the performance ordinarily expected of fallible lawyers." *Polk*, 32 M.J. at 153.

Furthermore, Appellant has not demonstrated that there were any false communications between himself and his trial defense counsel. Appellant, on the record, stated to the military judge that he was satisfied with his defense counsel's advice and with his defense counsel. Furthermore, Appellant was provided at least two extended opportunities to review the stipulation of fact and its attachments and never expressed any concern. There is nothing in the record that demonstrates that Appellant did not have time to review the stipulation of fact or that he had any objection to the document or its attachments. To the contrary, Appellant told the military judge that he had enough time to review the stipulation and its attachments and he wished to admit it was true. Finally, we see no evidence in the record to suggest a reasonable probability that, but for defense counsel's errors, Appellant would not have pleaded guilty and would have insisted on going to trial. In fact, the record demonstrates the opposite—that Appellant knowingly and willingly pleaded guilty at trial in order to receive the benefits of his PTA.

Even if we were to find that trial defense counsel were ineffective, Appellant has failed to meet his burden to demonstrate prejudice. Appellant claims on appeal that had this information regarding his alleged indecent exposure not been attached to the stipulation of fact, his sentence would have been less severe. We disagree and note that nothing in the record supports this argument. It is a "well-established rule that military judges are presumed to know the law and to follow it absent clear evidence to the contrary." *United States v. Hukill*, 76 M.J. 219, 221 (C.A.A.F. 2017). In this case, Appellant was sentenced by a military judge, and has offered no evidence to rebut the presumption. Appellant has presented no evidence that the military judge abdicated his role or that he inappropriately sentenced Appellant on the basis of a charge for which he was not convicted. Moreover, trial counsel did not argue that Appellant should be sentenced based on the conduct in the dismissed charge; in fact, trial counsel did not mention the DC3/CFL report at all during sentencing. Finally, other than being referenced in the DC3/CFL report, the indecent exposure allegation was not referenced in the body of the stipulation, discussed during the providence inquiry, or otherwise raised during the sentencing proceedings. We conclude that Appellant has failed to demonstrate that there would have been a different result.

### *b. Incorrect Legal Advice Regarding Clemency*

Appellant next contends that his defense counsel erred when they advised him that the convening authority had the power to mitigate his term of confinement in clemency. Appellant claims that had he been advised correctly, he would not have asked the convening authority to reduce his adjudged confinement to 12 months and instead would have made a different request for relief, specifically a change in his reduction in grade.

Both trial defense counsel, in their declarations, assert that they advised Appellant that the convening authority was not able to grant clemency for his sentence to confinement. Capt MM explained that, despite his advice, Appellant was "emotional" about the length of confinement and desired to request a reduction in confinement despite his advice that the convening authority could not grant such a request. Capt MM stated, "[i]n my judgment given [Appellant's] emotional state, it was beneficial for [him] to feel like he had done everything he could to get what he desired. In short, it was better to ask than to regret not asking." For this reason, Capt MM stated that he included in Appellant's clemency request a plea that Appellant's sentence be "lowered to 12 months." Additionally, Capt MM stated that he "also included a catch-all request that [Appellant] be shown 'whatever leniency' the [c]onvening [a]uthority could give." Finally, Capt MM provided that after Appellant reviewed the draft clemency request, Appellant "thanked [him] profusely and said it was more than he had hoped for."

Appellant has failed to meet his burden of demonstrating deficient performance in this case. The declarations submitted by trial defense counsel indicate that there are reasonable explanations for defense counsel's actions and advice. Furthermore, we are not persuaded that their individual and combined level of advocacy on Appellant's behalf was "measurably below the performance ordinarily expected of fallible lawyers." *Polk*, 32 M.J. at 153. Appellant's defense counsel made a reasonable decision to include in the clemency request both a plea for reduced confinement and "whatever leniency" the convening authority could grant. We will not second guess reasonable tactical decisions. Appellant has not demonstrated that his request foreclosed the possibility of other relief that the convening authority could grant.

Again, even if we were to find that trial defense counsel were ineffective, Appellant has also failed to meet his burden to demonstrate that there would have been a different result. Appellant states that he was prejudiced in that had he been made aware that the convening authority could not grant relief to mitigate his term of confinement, he would have requested different relief. We are not persuaded by Appellant's argument.

First, the fact that Appellant did not limit his clemency request to only mitigating his term of confinement cuts against his argument on appeal. In addition to asking the convening authority to mitigate his confinement, Appellant specifically asked the convening authority to "grant whatever leniency" he could. This left open the option for other forms of relief, as opposed to his personal request to mitigate his confinement. Second, Appellant's trial defense counsel also submitted a separate memorandum requesting deferment, reduction of the sentence, and waiver—in accordance with the PTA—and the convening authority provided the requested action. This demonstrates the convening authority's willingness to consider all forms of clemency. Third, we note that Appellant's trial defense counsel did not request a reduction in Appellant's sentence to confinement in their memorandum, instead asking for "leniency" in general. This fact supports their declarations that they knew the convening authority could not grant such a request and that they sought to broaden the clemency request to reach actions the convening authority could permissibly take.

Finally, there is no evidence in the record that the convening authority was improperly advised in this case. In fact, Appellant's clemency request did not reference any law or limitations on the convening authority's ability to grant clemency. We rely on the "presumption of regularity" for the convening authority's exercise of his responsibilities on clemency. *See United States v. Wise*, 20 C.M.R. 188, 194 (C.M.A. 1955). Here, the convening authority's decision on action demonstrated that the convening authority took appropriate action on the sentence, as required by the PTA and Article 60, UCMJ, 10 U.S.C. § 860. He consulted with his staff judge advocate, and considered all of the matters submitted by Appellant. There is no basis to infer that he was unaware that he had the ability to mitigate Appellant's reduction in grade, given his appropriate exercise of all other responsibilities. Moreover, Appellant has presented no argument for prejudice beyond a speculative comment that "there is a possibility that the convening authority could have reduced or commuted the reduction in rank." We find this to be "sheer speculation," *see Brown*, 54 M.J. at 293, particularly in light of the specific clemency request and the convening authority's subsequent actions. Appellant has failed to demonstrate prejudice and therefore is not entitled to relief.

## C. Sentence Appropriateness

Appellant contends his sentence is inappropriately severe in light of his record of service and asks this court to engage in a comparative sentence review.[7] We disagree and find Appellant's sentence appropriate.

---

[7] To the extent that Appellant asks this court to consider matters not presented during the presentencing hearing or in his clemency to the convening authority, those matters

This court "may affirm only . . . the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). We review sentence appropriateness de novo, employing "a sweeping Congressional mandate to ensure 'a fair and just punishment for every accused.'" *United States v. Baier*, 60 M.J. 382, 384 (C.A.A.F. 2005) (citations omitted). We are tasked with ensuring Appellant receives the right amount of punishment for his offenses. *See United States v. Barker*, 28 M.J. 121, 122 (C.M.A. 1989).

In determining whether a sentence is appropriate, we consider the "particular appellant, the nature and seriousness of the offense, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). We have a great deal of discretion in determining whether a particular sentence is appropriate, but we are not authorized to engage in exercises of clemency. *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A. 1988).

A sentence comparison is required if Appellant can demonstrate that (1) the cited cases are "closely related" to his case, and (2) the sentences are "highly disparate." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). Cases are "closely related" when they include "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.*

In the present case, Appellant has failed to demonstrate that the six cases cited in his *Grostefon* brief are "closely related" to his case. Appellant has not presented any evidence that the other cases he cited involve co-actors, common schemes, or any direct nexus to his case. Additionally, Appellant has not provided any information as to the unique facts and circumstances of these cases or any mitigating or extenuating factors which might have been present in those cases. Therefore, we find that a sentence comparison is neither required nor helpful.

After conducting a review of the entire record, we find that the adjudged and approved sentence is appropriate. In reaching this conclusion, we considered Appellant's unsworn statement, his enlisted performance reports, the defense exhibits submitted at trial, and all the matters submitted by Appellant during clemency. We also considered the facts of the offense to which Appellant pleaded guilty and all other properly admitted matters. Appellant faced a maximum sentence that included confinement for ten years and a

may not be considered by this court in assessing sentence appropriateness. *See Jessie*, 79 M.J. at 444.

dishonorable discharge. Appellant's PTA limited the maximum term of confinement to 30 months and explicitly stated that the punitive discharge could "be approved as adjudged." The fact that Appellant knowingly and voluntarily entered into an agreement with the convening authority which allowed for 30 months of confinement and a dishonorable discharge to be adjudged and approved undercuts his assertion on appeal that his sentence is inappropriately severe. We find Appellant's approved sentence of a dishonorable discharge, confinement for 26 months, and reduction to the grade of E-1 is appropriate for the crime he committed.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), Uniform Code of Military Justice, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.[8]



FOR THE COURT

*Carol K. Joyce*

CAROL K. JOYCE
Clerk of the Court

---

[8] We note the Statement of Trial Results in this case failed to include the command that convened the court-martial as required by R.C.M. 1101(a)(3). Appellant has made no claim of prejudice, and we find none. *See United States v. Moody-Neukom*, No. ACM S32594, 2019 CCA LEXIS 521, at *2–3 (A.F. Ct. Crim. App. 16 Dec. 2019) (per curiam) (unpub. op.).